**SP TERRACE, L.P. and Tyee Management, LLC,**
**Appellants,**

v.

**MERITAGE HOMES OF TEXAS, LLC, Appellee.**

No. 01–09–00155–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 21, 2010.

Michael C. O'Connor, O'Connor, Craig, Gould & Evans, P.C., Houston, TX, for Appellants.

David Watkin Jones, Beck, Redden & Secrest, LLP, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices BLAND and MASSENGALE.

## OPINION ON REHEARING

JANE BLAND, Justice.

In this dispute over an earnest money contract to develop a plat of real estate, the trial court granted summary judgment in favor of Meritage Homes of Texas, LLC (Meritage) on its breach of contract claim against SP Terrace, LP, and Tyee Management, LLC (collectively, SP Terrace). The trial court summarily rejected SP Terrace's counterclaims for breach of contract against Meritage.

The contract called for SP Terrace to file a subdivision plat by December 31, 2005. SP Terrace concedes that it did not meet this deadline. But it argues that the contract extended the deadline, or alternatively that its compliance was excused. It claims fact issues exist on its affirmative defenses of oral modification, waiver, delay and interference by Meritage, on the amount of attorney's fees, and on its counterclaim against Meritage. We conclude that SP Terrace raises a fact issue on the issues of waiver and delay, but not as to contract modification or interference. We therefore reverse the trial court's summary judgment and remand the case for trial. We grant rehearing and withdraw our opinion and judgment dated May 6, 2010, to address an argument that SP Terrace raises in its motion for rehearing. Our disposition is unchanged.

## Background

*Underlying Facts*

SP Terrace entered into an earnest money contract with Meritage to develop and sell ninety-six lots in a proposed Harris County subdivision. The development plan required small and narrow lots, and Meritage was one of a few builders who could construct houses to fit the particular lot sizes. The contract terms required SP Terrace to improve the overall subdivision. In particular, it required SP Terrace to file a subdivision plat with Harris County by a December 31, 2005 substantial completion deadline. After substantial completion, Meritage would then purchase the lots in a series of transactions. The total purchase price was $2,688,000. Meritage deposited ten percent of this price, $268,000, with SP Terrace as earnest money. If SP Terrace did not achieve substantial completion by December 31, 2005, Meritage could terminate the contract and recover its earnest money deposit. But, if Meritage delayed SP Terrace's performance of its contractual obligations, the substantial completion deadline would "be extended to the extent of any such delay."

On November 30, representatives from Meritage and SP Terrace met to discuss

the project. At this point, SP Terrace was ready to file the subdivision plat. Meritage asked for changes to the plat, and it requested that SP Terrace postpone filing the plat to accommodate those changes. SP Terrace agreed, but informed Meritage that a six-month extension of the substantial completion deadline would be necessary to address these and any future changes to the development. According to Tyler Todd, the president of Tyee Management, SP Terrace's general partner, and Kelly Smalley, the project manager, the parties orally agreed to extend the substantial completion deadline, and the representatives of Meritage agreed to sign a written extension memorializing the oral modification. Smalley mailed a written agreement to Meritage before December 31, 2005. She never received a response.

The parties continued to work together to make changes and improvements to the development into early February 2006. But on February 3, Meritage informed SP Terrace that, due to SP Terrace's failure to meet the substantial completion deadline, Meritage was terminating the contract and demanding the return of its earnest money deposit.

*Procedural History*

After SP Terrace refused to return the earnest money deposit, Meritage sued for breach of contract. SP Terrace counterclaimed for breach of contract, alleging that Meritage (1) delayed SP Terrace's performance, (2) failed to cooperate with SP Terrace, and (3) breached their oral agreement to extend the substantial completion deadline by six months, all of which entitled SP Terrace to retain the earnest money deposit and recover actual damages in addition to the earnest money it kept.

Meritage moved for traditional and no-evidence summary judgment on its claims against SP Terrace and on SP Terrace's counterclaim. Meritage contended that the parties never agreed to extend the substantial completion deadline. Meritage argued that SP Terrace's counterclaim failed as a matter of law because it did not state a claim for affirmative relief and the liquidated damages provision in the contract precluded SP Terrace from recovering actual damages in excess of the earnest money deposit. Meritage contended that SP Terrace's waiver defense failed because Meritage never renounced its right to terminate the contract, and the forty-eight days that had passed between the substantial completion deadline and the date Meritage demanded the return of its earnest money deposit was not long enough to show that Meritage intended to yield its right to terminate. Meritage argued that any oral modification of the contract is unenforceable because it materially altered the obligations of the underlying written contract. Meritage also noted that SP Terrace failed to present any evidence that the amount of liquidated damages was an unreasonable forecast of the amount of its damages.

SP Terrace responded with the Todd and Smalley affidavits to show that fact issues existed regarding (1) an agreement to extend the substantial completion deadline; (2) whether Meritage, through its oral agreement to extend the deadline and its continued work with SP Terrace after December 31, 2005, waived the deadline; and (3) whether Meritage breached its duties to cooperate with SP Terrace and to not delay or interfere with SP Terrace's performance of its contractual obligations. SP Terrace also argued that the liquidated damages provision of the contract, which limited SP Terrace's recovery to retention of the earnest money deposit, was unenforceable penalty because it hypothetically would allow the forfeiture of the deposit due to any breach by Meritage, including a trivial one.

The trial court granted Meritage's motions. Shortly thereafter, Meritage moved for entry of a final judgment, asking the trial court to award it $268,000 in damages, $71,170.50 in attorney's fees incurred in prosecuting its claims in the trial court proceedings, $40,000 in attorney's fees if SP Terrace appeals to an intermediate appellate court, and an additional $27,500 in attorney's fees if Meritage ultimately prevails after full briefing and oral argument to the Texas Supreme Court.

SP Terrace moved the trial court to reconsider the summary judgment. SP Terrace attached excerpts from the deposition of Michael Pizzitola, taken after the original submission of the summary judgment motions, to further support its contentions. SP Terrace also attached the affidavit of its counsel of record opposing Meritage's requested amount of attorney's fees. The trial court's docket sheet includes the following entry for December 8, 2008: "D. (seller) Motion for leave of court to file additional evidence granted." The trial court did not memorialize the docket entry in any order, even though SP Terrace submitted a proposed order and requested that the trial court sign it. The trial court entered a final judgment in favor of Meritage, awarding the $268,000 earnest money deposit as damages and the full amount of attorney's fees requested by Meritage.

## Discussion

### Standard of Review

We review de novo the trial court's grant of a motion for summary judgment. *Provident Life & Accid. Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex.2003). After an adequate time for discovery, a party may move for no-evidence summary judgment if there is no evidence of one or more essential elements of a claim or defense on which the adverse party bears the burden of proof at trial. Tex.R. Civ. P. 166a(i). Once a party moves for no-evidence summary judgment, the burden shifts to the non-movant to present evidence raising a genuine issue of material fact on each element specified in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex.2006). We review the evidence in the light most favorable to the non-movant, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005)).

When we construe a contract, we must "ascertain and give effect to the parties' intentions as expressed in the document." *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311–12 (Tex. 2005) (per curiam). We consider the contract as a whole in order to give effect to all provisions of the contract. *See id.* at 312. We give contractual terms their plain, ordinary, and generally accepted meaning unless the contract shows that the parties intended a different meaning to control. *See Heritage Res. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996).

### Late–Filed Summary Judgment Evidence

SP Terrace initially contends that the trial court erred in granting summary judgment because the late-filed deposition testimony of Meritage's Michael Pizzitola creates fact issues. Texas Rule of Civil Procedure 166a(c) provides that "[e]xcept on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response." Tex.R. Civ. P. 166a(c). A trial court may accept late-filed summary judgment evidence, but it must affirmatively indicate that it accepted or considered that

evidence. *See Stephens v. Dolcefino,* 126 S.W.3d 120, 133–34 (Tex.App.-Houston [1st Dist.] 2003, pet. denied). If no order in the record indicates that the court gave leave to file untimely evidence, then we presume that the trial court did not consider the evidence. *See Benchmark Bank v. Crowder,* 919 S.W.2d 657, 663 (Tex.1996); *Dixon v. E.D. Bullard Co.,* 138 S.W.3d 373, 375–76 (Tex.App.-Houston [14th Dist.] 2004, pet. granted, judgm't vacated w.r.m.); *Farmer v. Ben E. Keith Co.,* 919 S.W.2d 171, 176 (Tex.App.-Fort Worth 1996, no writ).

■ SP Terrace relies on the trial court's docket entry as sufficient indication that the trial court granted it leave to late-file the Pizzitola deposition as summary-judgment evidence. We previously have held, however, that a docket entry "forms no part of the record we may consider; it is a memorandum made for the trial court and clerk's convenience. This rule results, in part, from the inherent unreliability of docket entries." *Miller v. Kendall,* 804 S.W.2d 933, 944 (Tex.App.-Houston [1st Dist.] 1990, no writ) (citing *Energo Int'l Corp. v. Modern Indus. Heating, Inc.,* 722 S.W.2d 149, 151–52 (Tex.App.-Dallas 1986, no writ) ("Consequently, there is no indication in the record that permission of the court was requested or obtained to file the amended answer and that the amended answer was properly before the court.")). SP Terrace contends that our holding in *Dolcefino* supports its argument despite these cases. In *Dolcefino,* however, the trial judge stated on the record at the motion for reconsideration hearing that "the court will include the evidence offered today in the summary judgment record. The court, even taking this evidence into the record, denies Plaintiff's motion for new trial." *See Dolcefino,* 126 S.W.3d at 134. We noted that the trial judge's statement on the record indicated that the judge had accepted the evidence as belatedly offered summary judgment evidence. *See id.* Here, in contrast, SP Terrace requested that the trial court sign an order granting leave to file the additional evidence that it had attached to the motion for reconsideration. It attached the docket sheet and a proposed order, but the trial court never entered the order. Following *Miller,* we decline to extend the *Dolcefino* analysis to docket sheet entries, and thus hold that this evidence is not part of the summary judgment record.

■ In a similar vein, Meritage, in its response to SP Terrace's motion for reconsideration, attached excerpts from the deposition of Tyler Todd that it had not previously filed with the trial court. Meritage did not request leave of court to late-file these excerpts from Todd's deposition, and thus these excerpts do not form part of the summary judgment record. *See* Tex.R. Civ. P. 166a(c); *Dolcefino,* 126 S.W.3d at 133.

*Oral Modification of the Substantial Completion Deadline*

■ Turning to the merits, SP Terrace first contends that an oral modification to the contract exists and thus it is not liable for any breach associated with missing the December 31 deadline. Under the statute of frauds, a contract for the sale of real estate must be in writing and signed by the party charged with compliance with its terms. Tex. Bus. & Com.Code Ann. § 26.01(b)(4) (Vernon 2009). Generally, if a contract falls within the statute of frauds, then a party cannot enforce any subsequent oral material modification to the contract. *See Dracopoulas v. Rachal,* 411 S.W.2d 719, 721 (Tex.1967); *see also Walker v. Tafralian,* 107 S.W.3d 665, 670 (Tex.App.-Fort Worth 2003, pet. denied).

In *Dracopoulas,* the Texas Supreme Court held unenforceable an oral modifica-

tion that extended the time for performance indefinitely. *See Dracopoulas,* 411 S.W.2d at 722. The court reasoned that the termination date of the contract was the "hinge upon which still other contractual rights and duties turn," and extending the termination date indefinitely would destroy other contractual provisions that depended on the termination date to become operative. *See id.; see also King v. Texacally Joint Venture,* 690 S.W.2d 618, 620 (Tex.App.-Austin 1985, writ ref'd n.r.e.) ("It has been held that attempted alteration of the time for performance in real estate contracts is a material alteration." (citing *Vendig v. Traylor,* 604 S.W.2d 424 (Tex.Civ.App.-Dallas 1980, writ ref'd n.r.e.))). *But see Triton Comm'l Props., Ltd. v. Norwest Bank Tex., N.A.,* 1 S.W.3d 814, 819 (Tex.App.-Corpus Christi 1999, pet. denied) (holding that extending the time for performance does not, by itself, materially alter the underlying obligations, even if the contract would otherwise terminate). In the right circumstances, an extension for the time for performance can be a material alteration.

■ This case presents one of those circumstances. Even if the oral modification extending performance would not ordinarily materially alter the underlying written contract, when a party relies on the modification to assert that the other party is in material breach to excuse further performance, the modification then becomes material and unenforceable unless in writing. *See Walker,* 107 S.W.3d at 670; *King,* 690 S.W.2d at 620.

■ Todd and Smalley described the November 30 meeting between Meritage and SP Terrace representatives. Each averred that, at this meeting, Meritage representatives requested that SP Terrace delay filing the subdivision plat to allow the parties to continue making changes to the development. SP Terrace agreed, but requested a six-month extension of the December 31 deadline. According to Todd and Smalley, Meritage's representatives agreed to extend the deadline and to sign a written agreement confirming that extension. Smalley mailed a written extension to Meritage before December 31, and although Meritage never returned a signed extension, it also never objected.

Meritage points to a January 20, 2006, letter from Smalley to Steve Harding as evidence that the parties did not agree to extend the deadline:

> I had previously sent you an addendum to the Earnest Money Contract prior to the end of the year extending the date of the contract to June 30, 2006. As of this date, I have not received an executed addendum. I know there are still questions to be answered, but we need some assurance that we can reach an agreement and declare some sort of modified substantial completion.

It is thus undisputed that the parties never signed a written agreement to extend the deadline beyond December 31. In addition, SP Terrace viewed the extension of time to be a material alteration to the contract, sufficient to excuse it from further performance, stating to the trial court:

> Meritage agreed to extend the substantial completion date and/or caused a default or delay in the substantial completion. Meritage then refused to perform under the Contract by its February 3, 2006 letter. This evidence is sufficient to show a prior or anticipatory breach by Meritage, which would excuse further performance by SP Terrace.

SP Terrace thus asserts that Meritage's breach of the alleged oral extension of the substantial completion deadline was sufficient to excuse any further performance by SP Terrace. The modification here is a

material term—as such, it is unenforceable because it was never reduced to writing. *See Walker*, 107 S.W.3d at 670; *King*, 690 S.W.2d at 620. We hold that the trial court correctly granted summary judgment on SP Terrace's affirmative defense of modification.

*Waiver of the Substantial Completion Deadline*

■■■■ SP Terrace next contends that a fact issue exists regarding Meritage's waiver of the December 31 deadline. A party establishes waiver by demonstrating (1) the express renunciation of a known right or (2) silence or inaction for so long as to show the intent to yield a known right. *See Motor Vehicle Bd. v. El Paso Indep. Auto Dealers*, 1 S.W.3d 108, 111 (Tex.1999). Waiver can also result from acts that induce the other party to believe that the party will not insist on exact performance within the contractual time limits. *See Kennedy Ship & Repair, LP v. Pham*, 210 S.W.3d 11, 20 (Tex.App.-Houston [14th Dist.] 2006, no pet.); *see also KMI Continental Offshore Prod. Co. v. ACF Petrol. Co.*, 746 S.W.2d 238, 243 (Tex. App.-Houston [1st Dist.] 1987, writ denied) ("[A] waiver can occur if a party knowingly possessing the right acts in such a manner that the party misleads the opposing party into believing that a waiver has occurred."); *Alford, Meroney & Co. v. Rowe*, 619 S.W.2d 210, 213 (Tex.Civ.App.-Amarillo 1981, writ ref'd n.r.e.).

■■■■ The surrounding facts and circumstances must plainly demonstrate a party's intent to waive a known right. *See El Paso Indep. Auto Dealers*, 1 S.W.3d at 111. Waiver may result when: (1) a party assents to the other party's continued performance without objection to the delay; (2) a party states that it will not require strict compliance with a deadline or acts such that the other party reasonably believes strict compliance will not be re-

quired; or (3) a party insists on performance by the other party even after breach of the agreement. *See Delgado v. Methodist Hosp.*, 936 S.W.2d 479, 485 (Tex.App.-Houston [14th Dist.] 1996, no writ); *Fairfield Fin. Group, Inc. v. Gawerc*, 814 S.W.2d 204, 209 (Tex.App.-Houston [1st Dist.] 1991, no writ); *Seismic & Digital Concepts, Inc. v. Digital Res. Corp.*, 590 S.W.2d 718, 721 (Tex.Civ.App.-Houston [1st Dist.] 1979, no writ). Ordinarily waiver is a fact question; however, we decide a waiver issue as a matter of law if the facts and circumstances are admitted or established. *See El Paso Indep. Auto Dealers*, 1 S.W.3d at 111.

■■■■ Todd and Smalley aver that, at the end of November, SP Terrace was prepared to file the subdivision plat, but delayed the filing at Meritage's request. They both averred that they told Meritage that delaying the filing of the plat would require a six-month extension of the substantial completion deadline and that Meritage orally agreed to this extension, which suggested to them that Meritage would not insist upon the December 31 deadline. Smalley further averred that she mailed the written extension prior to December 31 and never received any objections to the extension. Todd and Smalley continued to work with Meritage on the development into February 2006. Smalley participated in a January 10, 2006, meeting with Steve Harding of Meritage to "discuss the proposed subdivision changes."

Meritage cites *Beal Bank, S.S.B. v. Schleider*, 124 S.W.3d 640 (Tex.App.-Houston [14th Dist.] 2003, pet. denied), to support its contention that SP Terrace does not raise a fact issue on waiver. In *Beal Bank*, the Fourteenth Court of Appeals held that representations that "an extension would not be a problem," the parties were "set to go," and the bank would "get

back to" Schleider were insufficient to establish waiver. *See id.* at 654. In contrast, here, Todd and Smalley aver that Meritage continued to participate in meetings with SP Terrace representatives and work with SP Terrace on further changes to the development even after the December 31 deadline, indicating that it continued to insist on performance after breach of the agreement. In his affidavit, Tyler Todd states that SP Terrace "continued to work with [Meritage] under the Contract and to accommodate changes requested by [Meritage] throughout December 2005, January 2006, and into February 2006." Kelly Smalley states that a Meritage representative participated in a meeting to discuss the proposed subdivision changes on January 10, 2006, after the deadline. We hold that SP Terrace raises a fact issue as to whether Meritage waived the December 31 substantial completion deadline and its right to terminate the contract on this basis, particularly in light of the contract provision that the substantial completion deadline "would be extended" to the extent of any delay caused by Meritage. *See Delgado*, 936 S.W.2d at 485 ("A party to a contract may effectively waive a breach by the other party by continuing to insist on performance by the other party even after a breach.").

*Delay and Interference by Meritage*

SP Terrace contends that fact issues exist as to whether Meritage caused delays and interfered with SP Terrace's performance of its contractual obligations thus breaching an implied duty to cooperate. ▮ We examine the written contract to determine the obligations of the parties. *See Bank One, Tex., N.A. v. Stewart*, 967 S.W.2d 419, 435 (Tex.App.-Houston [14th Dist.] 1998, pet. denied), *cited with approval in Keck v. Nat'l Union Fire Ins. Co.*, 20 S.W.3d 692, 701 (Tex. 2000); *Nalle v. Taco Bell Corp.*, 914

S.W.2d 685, 687 (Tex.App.-Austin 1996, writ denied). We do not imply a covenant regarding a matter specifically covered by the terms of the written contract, but we imply a duty to cooperate to the extent necessary for the contract's performance. *See Stewart*, 967 S.W.2d at 434. Thus, a party cannot "hinder, prevent, or interfere with [another's] ability to perform [its] duties under [the] agreement." *See id.* at 435. The implied covenant to cooperate differs from the broader implied covenant of good faith and fair dealing, which the Texas Supreme Court has rejected. *See Case Corp. v. Hi–Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 770 (Tex.App.-Dallas 2005, pet. denied) (citing *Tex. Nat'l Bank v. Sandia Mtg. Corp.*, 872 F.2d 692, 698–99 (5th Cir.1989)).

▮ When one party prevents another from timely performing its contractual obligations, the failure to timely perform is excused. *See Anderson Dev. Corp. v. Coastal States Crude Gathering Co.*, 543 S.W.2d 402, 406 (Tex.Civ.App.-Houston [14th Dist.] 1976, writ ref'd n.r.e.); *see also Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.-Houston [1st Dist.] 2003, no pet.) ("Prevention of performance by one party excuses performance by the other party."). According to Todd and Smalley, SP Terrace prepared to file the subdivision plat in November 2005, but at Meritage's request, it delayed filing it. Smalley also stated the following:

The development was often delayed by lack of information, delays in approvals and changes in plans and designs from [Meritage]. For example, I could not obtain timely approval from [Meritage] for finalizing the design of the fences, the location of the electrical service, Steve Harding's failure to attend a meeting on November 16, 2005 with CenterPoint Energy and failure to respond to CenterPoint Energy on various

issues. These failures and delays caused a delay in the substantial completion of the subdivision.

Section 16(k) of the contract provides that: "Seller [SP Terrace] shall not be responsible for any damage or delay caused by Purchaser [Meritage] or Purchaser's agent ... and the time limits for Seller's performance hereunder shall be extended to the extent of any such delay."[1] We hold that SP Terrace's summary judgment evidence raises a fact issue as to whether a delay caused by Meritage extended the substantial completion deadline.

*Summary Judgment on SP Terrace's Counterclaim*

SP Terrace also sues Meritage for breach of contract, and seeks damages beyond the earnest money deposit. The trial court rejected this claim, and SP Terrace appeals. Meritage responds that SP Terrace's counterclaim is not one for affirmative relief, but in any event, SP Terrace's recovery is limited to the earnest money contract.

*A. Claim for Affirmative Relief*

 Meritage argues that SP Terrace's asserted contractual defense to the refund of Meritage's earnest money deposit is not an affirmative claim for relief. To qualify as a claim for affirmative relief, the defendant must allege a cause of action independent of the plaintiff's claim, on which the defendant can recover benefits, compensation, or relief, even though the plaintiff may abandon or fail to establish its claim. *See Gen. Land Office v. OXY USA, Inc.*, 789 S.W.2d 569, 570 (Tex.1990).

If the defendant only resists the plaintiff's right to recover, then it does not state a claim for affirmative relief. *See id.*

In its "Second Amended Answer and First Amended Counterclaim," SP Terrace stated that Meritage's "actions, promises and representations" constituted a prior breach of the contract by Meritage, which excused SP Terrace from further performance and entitled SP Terrace to retain the earnest money deposit and recover actual damages, including lost profits, of at least $1,400,000.

 Meritage argues that because SP Terrace always possessed the earnest money deposit, and if SP Terrace prevailed or Meritage abandoned its claim, SP Terrace would simply retain the earnest money. Therefore, SP Terrace's counterclaim, which asks the trial court to determine that SP Terrace is entitled to the earnest money, is essentially a claim for declaratory relief. We disagree. SP Terrace asked the trial court to determine it has a right to the earnest money deposit, but it also seeks actual damages beyond the earnest money deposit. *See Howell v. Mauzy*, 899 S.W.2d 690, 706 (Tex.App.-Austin 1994, writ denied) ("A court may allow a declaratory-judgment counterclaim, however, if it is something more than a mere denial of the plaintiff's claim and has greater ramifications than the original suit. A counterclaim has greater ramifications than the original suit if it seeks affirmative relief.") (internal citations omitted). We hold that SP Terrace's allegations state a claim for relief independent of Meritage's breach of contract

1. The contract provides in section 16(k) that the substantial completion deadline "would be extended" if Meritage caused the delay of the deadline. Meritage argued in the trial court that SP Terrace's reference to section 16(k) in an amended pleading filed after its motion for partial summary judgment was filed came too late to support its contractual defenses. We disagree, in so much as SP Terrace expressly argued in its summary judgment response that "by words, actions and inaction, Meritage caused the default and/or delay in the substantial completion."

claim. If the trier of fact concludes that Meritage has waived performance of the substantial completion deadline and was in breach of the agreement, then SP Terrace is entitled to pursue its claim for breach.

### B. Earnest Money as Liquidated Damages

■■ SP Terrace asked the trial court to set aside the earnest money liquidated damages provision for a breach by Meritage, contending that it penalizes Meritage because it requires Meritage to forfeit its earnest money no matter how trivial its breach. SP Terrace requests this interpretation of the contract so that its damages claim against Meritage can exceed the earnest money deposit it kept after Meritage terminated the contract. The clause in question provides that, upon default by Meritage, SP Terrace, as its sole remedy, may terminate the contract and retain the earnest money deposit.

■■ We enforce a liquidated damages clause if (1) the harm caused by the breach is incapable or difficult of estimation, and (2) the amount of liquidated damages is a reasonable forecast of just compensation. See Phillips v. Phillips, 820 S.W.2d 785, 788 (Tex.1991). An assertion that a liquidated damages provision constitutes an unenforceable penalty is an affirmative defense, and the party asserting penalty bears the burden of proof. See Urban Television Network Corp. v. Liquidity Solutions, 277 S.W.3d 917, 919 (Tex.App.-Dallas 2009, no pet.); Fluid Concepts, Inc. v. DA Apts., LP, 159 S.W.3d 226, 231 (Tex.App.-Dallas 2005, no pet.). Generally, that party must prove the amount of actual damages, if any, to demonstrate that "the actual loss was not an approximation of the stipulated sum." Baker v. Int'l Record Syndicate, Inc., 812 S.W.2d 53, 55 (Tex.App.-Dallas 1991, no writ). If the amount stipulated in the liquidated damages clause is "shown to be disproportionate to actual damages," we should declare that the clause is a penalty and limit recovery to actual damages. Johnson Eng'rs, Inc. v. Tri–Water Supply Corp., 582 S.W.2d 555, 557 (Tex.Civ.App.-Texarkana 1979, no writ); see also Tex. Bus. & Com.Code Ann. § 2.718(a) (Vernon 2009) ("A term fixing unreasonably large liquidated damages is void as a penalty."). Whether a liquidated damages clause is an unenforceable penalty is a question of law for the court, but sometimes factual issues must be resolved before the court can decide the legal question. See Phillips, 820 S.W.2d at 788. For example, in Phillips, the Texas Supreme Court observed that "to show that a liquidated damages provision is unreasonable because the actual damages incurred were much less than the amount contracted for, a defendant may be required to prove what the actual damages were." Id.

■■ SP Terrace adduced no evidence in the trial court that Meritage's forfeit of its earnest money operated as a penalty because Meritage's breach was a trivial one. Its aim was just the opposite—it was to prove that Meritage's breach caused damages far higher than the earnest money amount, although it offered no proof of that theory either. We decline to remove a limitation of remedy provision absent any evidence that the liquidated amount in the contract is unreasonably high or low in light of the alleged breach. See Urban Television, 277 S.W.3d at 919; Fluid Concepts, Inc., 159 S.W.3d at 231.

SP Terrace relies on cases in which courts have disregarded liquidated damages provisions as unreasonable in their approximation of actual damages for trivial breaches. See Stewart v. Basey, 150 Tex. 666, 245 S.W.2d 484, 487 (1952) ("Our conclusion is that, since the contract provided the same reparation for the breach of each

and every covenant, and since it would be unreasonable and a violation of the principle of just compensation to enforce it as to some of them, the provision for stipulated damages should be treated as a penalty."); *Community Dev. Serv., Inc. v. Replacement Parts Mfg., Inc.*, 679 S.W.2d 721, 727 (Tex.App.-Houston [1st Dist.] 1984, no writ) (holding that liquidated damages clause in earnest money contract was unenforceable penalty, because even though it provided reasonable damages for major breaches of the contract, it also allowed unreasonable damages for trivial breaches); *Bethel v. Butler Drilling Co.*, 635 S.W.2d 834, 837–38 (Tex.App.-Houston [14th Dist.] 1982, writ ref'd n.r.e.) (holding same). These cases are distinguishable in that either it was the breaching party who argued that the provision was a penalty, or in that the party seeking to set aside the provision adduced evidence that the liquidated damages clause was not a reasonable approximation of damages caused by the breach. *See Stewart*, 245 S.W.2d at 487 (where actual damages incurred by breaching party amounted to $38.50, "stipulation to pay several thousand dollars . . . would be so unreasonable that no court would lend its power to enforce it"); *Community Dev.*, 679 S.W.2d at 727 (jury findings and evidence supported claim that earnest money provision operated as penalty); *Bethel*, 635 S.W.2d at 843 (upholding trial court's determination that liquidated damages clause was penalty against

breaching party, and limiting plaintiff's recovery to actual damages).

■ A liquidated damages provision is a penalty if it punishes the breaching party by subjecting it to a disproportionately high amount of damages relative to reasonably anticipated actual damages. Absent evidence that the earnest money amount here was not a reasonable approximation of an anticipated breach, limiting recovery to the earnest money deposit and preventing a party from recovering actual damages in excess of the bargained for liquidated amount does not constitute a penalty to the breaching party.[2] We decline to hold as a matter of law that the earnest money provision in this case is a penalty. *Cf. Phillips*, 820 S.W.2d at 788–89 (no fact issue that provision was penalty against breaching party because it provided that actual damages be determined and multiplied tenfold).

*Required Notice to Recover Earnest Money*

■ Finally, SP Terrace contends that it did not receive thirty days' notice and an opportunity to cure the default. Section 9(c) of the contract states:

In the event Seller shall default in Seller's obligations hereunder . . . Purchaser shall give Seller thirty (30) days written notice and opportunity to cure such default. If Seller fails to cure its default within the thirty day period provided in

2. Other jurisdictions that have addressed this issue have held similarly, and refused to strike the liquidated damages provision on the ground that it is an unenforceable penalty. *See, e.g., Mahoney v. Tingley*, 85 Wash.2d 95, 529 P.2d 1068, 1070 (1975) ("A penalty exists where there is an attempt to enforce an obligation to pay a sum fixed by agreement of the parties as a punishment for the failure to fulfill some primary contractual obligation. In this case, it is not the party in default who seeks relief from an excessively high liqui-

dated damages provision. Rather, the provision operates to limit the recovery of the party who incurred a loss as a result of the other parties' breach. There being no element of punishment involved, it cannot be said that plaintiff is being penalized in any sense.")(internal citations omitted); *Margaret H. Wayne Trust v. Lipsky*, 123 Idaho 253, 846 P.2d 904, 910 (1993) (following *Mahoney* and refusing to strike down liquidated damages provision as penalty when non-breaching party sought damages in excess of provision amount).

the notice, Purchaser, as its sole and exclusive remedies, may either (i) terminate this Contract and obtain the return of its Earnest Money or (ii) enforce specific performance of Seller's obligation to convey the Lot(s) upon payment of the Purchase Price.

Meritage responds that the contract does not require notice and an opportunity to cure because section 4(i) states that if "Substantial Completion does not occur by December 31, 2005 at option of Purchaser this Contract shall terminate and Purchaser is *relieved of any obligation hereunder.*" We agree, and hold that once Meritage exercised its option to terminate due to SP Terrace's failure to meet the deadline, Meritage was relieved of further contractual obligations, including the requirement of providing notice and an opportunity to cure. Reading the contract to require notice and an opportunity to cure before recovering the earnest money, even if SP Terrace did not achieve substantial completion by December 31, would render section 4(i)'s provision that failure to achieve substantial completion by December 31 relieves Meritage of *any* contractual obligation a nullity. *See J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex.2003) ("[W]e must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless."). We therefore hold that SP Terrace was not entitled to notice and a thirty day opportunity to cure any failure to comply with the substantial completion deadline.

### Conclusion

We hold that SP Terrace failed to raise a fact issue on its affirmative defenses of

modification and interference by Meritage, but raises fact issues whether Meritage waived performance of the December 31 substantial completion deadline and whether Meritage caused delay that extended the time for performance. We further hold that SP Terrace's counterclaim states a claim for affirmative relief, but that SP Terrace fails to prove on this record that the earnest money provision of the contract is unenforceable as a matter of law. We therefore reverse and remand the case for further proceedings.[3]

---

3. SP Terrace also contends that the trial court awarded unreasonable and excessive attorney's fees to Meritage. Because we reverse and remand on the merits, we vacate the award of attorney's fees.