**Affirmed and Memorandum Opinion filed July 22, 2014.**



**In The**

# Fourteenth Court of Appeals

---

## NO. 14-13-00172-CV

---

## CASTLE HILLS PHARMACY, LLC AND MICHAEL L. WARD, Appellants

## V.

## JOSEPH A. TRIAL, Appellee

---

**On Appeal from the County Civil Court at Law No. 3
Harris County, Texas
Trial Court Cause No. 1002800**

---

## M E M O R A N D U M   O P I N I O N

An electricity provider sued Joseph A. Trial for damages under a contract to provide services to Trial's pharmacy after appellant Michael L. Ward purchased the pharmacy from Trial and switched electricity providers, triggering early-termination fees. The trial court found Trial liable to the electricity provider and Ward liable to Trial. On appeal, Ward contends that the trial court erred in finding him liable to Trial on any of Trial's pleaded theories and in rejecting Ward's and his company's counterclaims against Trial for breach of contract. We affirm.

# I. FACTUAL AND PROCEDURAL BACKGROUND

In 1976, Joseph A. Trial, a pharmacist, purchased and operated a pharmacy at 3412 Sam Houston Drive in Victoria, Texas. At some point, he began operating under the assumed name of Castle Hills Pharmacy. In 2008, Castle Hills Pharmacy and Champion Energy Services, LLC, executed an energy-services contract for Champion to supply electricity to three meters at the pharmacy: one for the main building, and one for each of two security lights around the building. The sixty-month contract provided that if the pharmacy switched electric service to another provider within the contract term it would be subject to, among other things, early-termination fees. The contract also prohibited the pharmacy from assigning the contract without Champion's express written consent.

Trial eventually decided to sell his pharmacy and retire. Trial had known Michael L. Ward for about ten years, and Ward had worked for Trial as a pharmacist for about eighteen months before he agreed to purchase the pharmacy from Trial in 2009. In anticipation of the purchase, Ward formed a company, Castle Hills Pharmacy, LLC (the "LLC").[1]

On February 19, 2009, Trial and Ward executed an Asset Purchase Agreement (the "Agreement") for "the retail pharmacy, real property and improvements, prescription records, telephone numbers, trade name and the trade fixtures, appliances and inventory including any warranties which may still be in effect, therein contained." Exhibit A, identifying the assets to be sold, included "[c]ontract rights, if assignable." Relevant here, paragraph 6(b) of the Agreement provided that upon closing the sale, Ward was obligated to "execute any and all

---

[1] Because of the similarity between Trial's d/b/a as "Castle Hills Pharmacy" and Ward's company, "Castle Hills Pharmacy, LLC," for clarity's sake we will refer to the physical pharmacy as "the pharmacy" and Ward's company as "the LLC" unless the context requires otherwise.

documents required for the assumption of the leases, service agreements and contracts." On February 27, 2009, the pharmacy business was conveyed under a "Blanket Bill of Sale" between Trial and the LLC. The bill of sale recited that the transferred properties included "[a]ll of Seller's interest in all management, maintenance, service, supply, employment, and vending machine contracts, if any . . . ." Trial, however, did not tell Ward about the Champion contract either before or after the closing.

After the closing, Ward began operating the pharmacy. Champion continued to provide electricity services to the pharmacy and mail its invoices to "Castle Hills Pharmacy, Joe Trial," at the pharmacy's Sam Houston address. Ward customarily opened the envelopes and paid the invoices, all of which included the statement, "You have a contract valid from 06/17/2006 to 06/16/2013[.]" Ward never discussed his electricity service with Trial, however, and he never sought or obtained an assignment of Trial's contract with Champion.

On September 30, 2009, Ward requested that Champion disconnect the meter to one of the security lights on the property. At that time, Champion informed Ward that Trial, as the customer on the account, would have to approve the change. Although the record discloses an amendment to the Champion contract to disconnect the meter, which purportedly reflects Trial's signature, the parties dispute whether Trial signed the document. Ward later switched his electric service at the two remaining meters to a different electricity provider, but did not discuss his decision to switch providers with Trial. In August 2010, Champion began invoicing the early-termination fees, totaling over $15,000.00. Ward did not pay these invoices.

In 2011, Champion sued Trial to recover the unpaid balance on the account. Trial answered and sued Ward and the LLC as third-party defendants. Ward and

3

the LLC each filed answers, asserting various affirmative defenses, and counterclaims for breach of contract. The case was tried to the court, and on February 25, 2013, the trial court signed a judgment ordering that Champion recover from Trial actual damages of $15,008.97, plus attorney's fees and court costs. The court further ordered that Trial recover $15,008.97 from Ward, plus attorney's fees. Ward timely requested findings of fact and conclusions of law, but the trial court did not make them. This appeal followed.

## II.   ANALYSIS OF ISSUES ON APPEAL

On appeal, Ward and the LLC contend the trial court reversibly erred by: (1) holding Ward liable to Trial under any of Ward's pleaded bases for liability; (2) rejecting Ward's and the LLP's counterclaim against Trial for breach of contract, and (3) failing to file findings of fact and conclusions of law. Because the third issue informs our discussion of Ward's first two issues, we begin there.

### A.     The Findings of Fact and Conclusions of Law

In his third issue, Ward and the LLC contend that the trial court erred in failing to file findings of fact and conclusions of law, and request that this court abate the appeal and instruct the trial court to make them. When properly requested, the trial court has a mandatory duty to file findings of fact and conclusions of law. *Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 770 (Tex. 1989). If the trial court does not file findings of fact and conclusions of law, harm is presumed unless the record affirmatively shows that the requesting party was not harmed by their absence. *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996) (per curiam). Error is harmful if it prevents an appellant from properly presenting a case to the appellate court. *Id.*

Ward and the LLC complain that the trial court's error leaves them

4

"guessing about the grounds for its final judgment and effectively unable to argue their appeal." Ward and the LLC argue that Trial asserted five claims against them (indemnification, forgery, contribution, breach of contract, and quantum meruit), any of which, they contend, could have been the basis for the trial court's judgment. Ward and the LLC further argue that they asserted affirmative defenses, including release, merger, the statute of frauds, waiver, and estoppel, all of which the trial court apparently rejected, and trial court's judgment does not mention their counterclaim for breach of contract. In response, Trial does not dispute that Ward and the LLC timely and properly requested the findings and conclusions, but asserts that Ward's liability is "obvious" from the record.

We granted Ward's and the LLC's request, abated the appeal, and directed the trial court file findings of fact and conclusions of law. The trial court responded, and although most of its findings concerned Champion's claims against Trial, which are not at issue in this appeal, the trial court made two findings relevant here:

- "Based on a valid and enforceable Asset Purchase Agreement dated February 19, 2009 between Defendant Joseph A. Trial and Third-party Defendant Michael L. Ward (regarding the purchase and transfer of Cast[le] Hills Pharmacy), Third-party Defendant Michael L. Ward is liable to Defendant Joseph A. Trial for breach of contract for actual damages in the amount of $15,008.97 and reasonable and necessary attorney's fees in the amount of $5,000.00."

- "There was no sufficient evidence presented to support a counterclaim by Third-party Defendant Michael L. Ward against Defendant Joseph A. Trial for breach of contract."

Thus, the trial court found Ward liable to Trial for breach of contract, and rejected Ward's breach-of-contract counterclaim against Trial because he failed to present sufficient evidence to support it. These findings inform our discussion of Ward and the LLC's remaining issues.

5

**B.      Is Ward is Liable to Trial for Breach of Contract?**

In his first issue, Ward contends the trial court erred in finding him liable to Trial on any of the grounds Trial asserted against him. As noted above, because the trial court has clarified in its findings of fact and conclusions of law that it found for Trial against Ward on Trial's breach-of-contract claim, we will begin by considering whether the evidence supports the trial court's finding.

**1.      Standards of Review**

A trial court's findings are reviewable for legal and factual sufficiency of the evidence by the same standards applied in reviewing the evidence supporting a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). We review the trial court's legal conclusions de novo to determine if the trial court drew the correct legal conclusions from the facts. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

When considering a legal-sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). The evidence is legally sufficient if it would enable a reasonable and fair-minded person to reach the verdict under review. *Id.* at 827. When reviewing a challenge to the factual sufficiency of the evidence, we weigh all of the evidence and set aside the fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).   In a bench trial, the trial court, as fact finder, is the sole judge of the witnesses' credibility and the weight to give their testimony. *See City of Keller*, 168 S.W.3d at 819; *Barrientos v. Nava*, 94 S.W.3d 270, 288 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

## 2. Sufficiency of the Evidence to Support Breach-of-Contract Finding

Paragraph 6(b) of the Agreement provides that upon closing, "[Ward] will execute and deliver and [Trial] will execute, where appropriate, and accept . . . any and all documents required for the assumption of the leases, service agreements and contracts." Ward does not dispute that the Champion contract is within the scope of this provision, but he argues that he cannot be held liable for failing to comply with an obligation to assign a contract he was never told existed.

First, Ward argues that the only duty imposed on him under 6(b) is to "execute and deliver" documents required for assuming the Champion contract. Thus, Ward argues, he cannot be liable to Trial for breach of the Agreement because he had no obligation under paragraph 6(b) to investigate the pharmacy's contracts himself. Even if he had a duty to investigate, Ward contends, he could not be expected to investigate whether the contract existed or to initiate an assignment when Trial did not tell Ward about the contract and failed to familiarize himself with the Champion contract's assignment requirements and early-termination fees.

The record reflects that, under the Agreement, Trial agreed to sell Ward all of his interest in the pharmacy except for those items expressly excluded. Also, the bill of sale specifically provides that Trial was transferring to Ward "[a]ll of Seller's interest in all . . . service . . . contracts[.]" Thus, Trial conveyed all of his interest in any pharmacy service contracts to Ward in February 2009, and under 6(b) of the Agreement, Trial was obligated to execute and accept such assignments and Ward was obligated to execute any documents required to assume such service agreements.

Trial acknowledged that he never familiarized himself with the assignment

or early-termination provisions of the Champion contract, and he also did not tell Ward about the contract because he did not remember it. The record also showed, however, that after the sale, Champion continued providing electricity services to Castle Hills Pharmacy; Champion's monthly invoices were addressed to Joe Trial at the pharmacy; Ward regularly opened Champion's mail; and Ward paid Champion's invoices.[2] Each invoice Ward paid contained the following statement: "You have a contract valid from 06/17/2008 to 06/16/2013[.]" The invoices thus plainly reflect that Champion was providing electric service to the pharmacy pursuant to a contract with Champion that was valid to June 16, 2013.

Nevertheless, Ward maintained that he had "no idea" a contract existed, because "as far as [he] knew, this was a month-to-month thing" similar to what he had at his home. Ward also testified that he was not bothered that Trial's name appeared on the monthly bills, because Ward "had not had time yet to strike [his] own bill." Ward explained that, as time went by, he prioritized the things he had to change to his own name and, after those "higher priority" items—including the water bill—had been addressed, "then farther down the road when [he] had more time, that's when [he] decided to do the electric bill in [his] name." And, Ward acknowledges that in September 2009, he was informed that Champion required Trial's signature to amend the contract to allow removal of one of the two security-light meters, yet at no time did he discuss his electrical service with Trial. Even after he received the initial invoice for over $14,000 in early-termination fees, Ward did not attempt to contact Trial to discuss it, because, he testified, he thought it was "all bogus." Instead, unlike the other bills that Ward opened and paid, Ward merely had an employee deliver that bill to Trial's home.

---

[2] When asked whether Ward opened Trial's mail, Ward replied, "in most cases, yes, whenever it was something like this, yes." Trial testified that he never gave Ward permission to open his mail.

On this record, the trial court could have discounted Ward's explanation that he assumed the contract was merely a "month-to-month thing" and concluded that the evidence was sufficient to inform Ward that an electrical-services contract existed between Trial and Champion, it was a service contract that had been transferred to Ward as part of the Agreement and bill of sale, and, therefore, under paragraph 6(b) of the Agreement, Ward was obligated to obtain an assignment of the contract but failed to do so. Thus, even if Trial initially failed to inform Ward of the existence of the Champion contract, and assuming Ward had no duty to independently investigate the existence of any previously unidentified contracts, the trial court did not err in finding that Ward breached the Agreement.

Ward argues that, even if he had a duty to investigate, "[a] contractor is excused from performance when the owner fails to provide the required means to complete the contract." *See SP Terrace, L.P. v. Meritage Homes of Texas, LLC*, 334 S.W.3d 275, 285 (Tex. App.—Houston [1st Dist.] 2010, no pet). As we have explained, even though Trial did not tell Ward about the Champion contract, Ward had sufficient independent evidence of the contract's existence to trigger his duty to comply with paragraph 6(b) by obtaining an assignment of the Champion contract. And, Ward does not contend Trial unreasonably withheld consent to an assignment of the contract; indeed, Ward made no effort to discuss the pharmacy's electrical service with Trial at any time, either with Trial or Champion.

Ward next argues that he is not liable to Trial for breach of contract because Trial waived Ward's performance of paragraph 6(b). Waiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right. *Clear Lake Cntr., L.P. v. Garden Ridge, L.P.*, 416 S.W.3d 527, 542 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). The elements of waiver

include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Id.* (citing *Ulico Cas. Co.*, 262 S.W.3d at 778). Waiver is an affirmative defense of which Ward had the burden of proof. *See El Paso Natural Gas Co. v. Am. Petrofina Co. of Tex.*, 733 S.W.2d 541, 553 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

Ward acknowledges that in September 2009, he was informed that Champion required Trial's signature on the addendum to his contract with Champion to allow removal of one of the two security-light meters. Ward argues that if Trial signed the addendum as Ward testified, then Trial waived Ward's performance of 6(b). Alternatively, if someone other than Ward forged Trial's signature, then Trial's earlier conduct (presumably his failure to inform Ward of the Champion contract's existence) either waived Ward's performance or estopped him from complaining that Ward breached 6(b).

Trial steadfastly denied signing the addendum, and testified that he had never seen the document before the lawsuit began. Trial also stated that, while he believed someone forged his signature, he did not believe it was Ward. Conversely, Ward testified that, in his opinion, Trial signed the document. Ward also stated that he had seen Trial's signature "many, many times" and offered that it could be compared to other signatures Ward had on file. Ward also denied that he or someone else at his direction signed Trial's name. However, Ward acknowledged that he did not ask Trial to sign the addendum, and, in fact, he never contacted Trial about moving the meter. Ward also acknowledged that the fax number to "Castle Hills Pharm." appearing at the top of the document was his fax number, but he could not remember if he faxed it or if his fax machine was used to fax the document to Champion.

On this record, we conclude that the trial court would not have erred in rejecting Ward's affirmative defense of waiver. The trial court, as the sole fact finder, could have accepted Trial's testimony that he never signed the addendum and disbelieved Ward's contrary testimony.

Ward points to no other evidence that would support a finding that Trial actually intended to waive his right to Ward's compliance with 6(b), or that Trial engaged in any intentional conduct inconsistent with that right. Ward merely argues that Trial's silence and inaction about the Champion contract "of which he was aware" waived Ward's obligation to comply with 6(b) to investigate and initiate its assignment to him. However, Trial testified that after he executed the Champion contract he simply filed it away in a pharmacy filing cabinet and forgot about it. We conclude Ward did not conclusively establish that Trial waived Ward's performance of 6(b). We overrule Ward's first issue.

## C.     Is Trial Liable to Ward and the LLC for Breach of Contract?

In his second issue, Ward and the LLC contend that the trial court erred in rejecting their counterclaim against Trial for breach of contract.[3]  Ward points to a separate provision at paragraph 24 of the Agreement titled, "No Reliance on Third Parties," which provides as follows:

> Each party is entering into this Agreement in reliance upon the other party's representation that there are no obligations, agreements or understandings between such party and any such third party that would in any manner affect this Agreement.

---

[3] Trial argues that Ward never presented any breach-of-contract counterclaim and offered no theory of damages other than attorney's fees. However, Ward and the LLC pleaded counterclaims for breach of contract, and Ward questioned Trial concerning the basis for his claim without objection. Further, on appeal, Ward and the LLC rely on the evidence developed at trial to support their issue. We will therefore consider the merits of Ward's and the LLC's argument.

11

To recover for breach of contract, Ward had to establish (1) the existence of a valid contract, (2) Ward performed or tendered performance, (3) Trial breached the contract, and (4) Ward suffered damages as a result of Ward's breach. *See Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 72 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). Ward contends that the first two elements are undisputed, and he argues that Trial's testimony constitutes an admission that his representation under paragraph 24 was false at the time he signed the Agreement. However, Ward points to no evidence in the record that he suffered damages as a result of Trial's alleged breach of contract, and we have found none.

On appeal, Ward argues that his damages "consist, at present, of his third-party liability for Trial's damages" and, even if this court relieves him of that liability, he is still damaged "to the extent of the attorney's fees he has expended because of Trial's breach." The record shows that, as a result of Trial's failure to tell Ward about the Champion contract before Ward purchased the pharmacy, Ward enjoyed the benefit of Champion's continued provision of electrical service to the pharmacy for many months without any obligation to Champion. When Ward switched electricity providers before the contract's term ended—triggering the early-termination fees—the trial court found that Trial, not Ward, was liable to Champion for actual damages of $15,008.97. The trial court found that Ward was liable to Trial for an equal amount of actual damages because, as discussed above, Ward breached the Agreement by failing to assume Trial's obligation under the Champion contract.

The record shows that Ward offered no evidence to support a claim that he suffered actual damages as a result of any alleged breach of the Agreement by Trial. Indeed, at the start of the trial, the trial court specifically asked Ward's counsel what Ward was seeking, and he stated that Ward was seeking $5,000.00 in

12

attorney's fees and damages of $250.00. When the trial court asked what the $250.00 in damages represented, counsel responded that it was for Ward's "expenses in just coming back and forth to Houston." The trial court explained that Ward's travel expenses were "not damages" and advised that Ward was "not entitled to that under any legal theory." Ward's counsel acknowledged that was correct.[4] Therefore, on this record, the trial court did not err in finding that "no sufficient evidence" was presented to support Ward's and the LLC's breach-of-contract counterclaim against Trial. We therefore overrule Ward's and the LLC's second issue.

## III. CONCLUSION

The trial court's judgment is affirmed.

/s/     Ken Wise
        Justice

Panel consists of Chief Justice Frost and Justices Jamison and Wise.

---

[4] Ward's counsel argued that, alternatively, Ward was entitled to the damages and attorney's fees under Texas Rule of Civil Procedure 13, but Ward did not file a Rule 13 motion for sanctions in the trial court and does not argue Rule 13 as an alternative basis for damages and attorney's fees on appeal.