**FLUID CONCEPTS, INC.,**
Appellant/Cross–
Appellee,

v.

**DA APARTMENTS LIMITED PART-
NERSHIP; DA Apartments Genpar,
Ltd.; DA Apartments I Corporation;
and Dalcor Property Management,
Inc., Appellees/Cross–Appellants.**

No. 05–04–00120–CV.

Court of Appeals of Texas,
Dallas.

Feb. 17, 2005.

Rehearing Overruled April 8, 2005.

John A. Stewart, Dallas, for appellant.

Jeffrey A. Brannen, McGuire, Craddock, Strother & Hale, P.C., Dallas, for appellees.

Before Justices RICHTER, LANG, and MAZZANT.

## OPINION

Opinion By Justice LANG.

This is an appeal from a summary judgment dismissing Fluid Concepts, Inc.'s claims for breach of a personal property lease, conversion of the leased property, past due lease payments, liquidated damages as provided in the lease agreement, and for claims for foreclosure of liens arising from security agreements/financing statements. For the reasons set forth below, we affirm the trial court's summary judgment in part and reverse in part and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Fluid Concepts manufactures and installs water treatment systems for commercial water lines. At issue in this appeal are five water treatment systems installed in an apartment complex in Austin, Texas. In 1994, a "lease agreement renewal" covering these systems was signed by Fluid Concepts, as lessor, and agents of the apartment complex, as lessee. Sometime after 1994, appellees (DA) acquired the apartment complex and began paying the quarterly rental fees for these systems. In January 2000, DA stopped making the lease payments. DA cancelled the lease in August 2000. It is undisputed that these systems were missing in October 2000.

Fluid Concepts asserted causes of action against DA for: (1) breach of contract, negligence, and conversion/waste, claiming damages for the value of the equipment, rentals, and liquidated damages, (2) foreclosure pursuant to constitutional and statutory lien claims and security agreements/financing statements, and (3) attorney's fees pursuant to the "agreement." Fluid Concepts also alleged that DA was in default by failing to make payments under the lease and failing to return the missing water treatment systems or pay for them as demanded.

DA moved for summary judgment on all claims on both traditional and no-evidence grounds. Fluid Concepts filed a response, supported by evidence. DA objected to the admissibility of Fluid Concepts's proof of damages as set out in an expert's affidavit regarding the value of the water treatment systems. In its order granting final summary judgment, the trial court granted summary judgment in DA's favor on all claims and overruled DA's objections to Fluid Concepts's evidence. Fluid Concepts's motion for new trial was overruled

by operation of law. The parties filed timely notices of appeal.

## STANDARD OF REVIEW

When it presented its traditional motion for summary judgment, DA had the burden to demonstrate no genuine issues of material fact existed and that it was entitled to judgment as a matter of law. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Once DA established its right to summary judgment, the burden shifted to Fluid Concepts to present the trial court with evidence of any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). DA's no-evidence motion for summary judgment required Fluid Concepts to present sufficient evidence to raise a genuine issue of fact on each challenged element of its claims. *See Gen. Mills Rest. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832–33 (Tex.App.-Dallas 2000, no pet.). Because the trial court granted DA's motion for summary judgment without specifying the grounds on which its ruling was based, Fluid Concepts must establish that each summary judgment ground alleged by DA was insufficient to support the trial court's judgment. *See Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995). Fluid Concepts claimed the summary judgment was improper as to three of its claims. Each of the claims is addressed in a separate point. Accordingly, we take them up below seriatim.

## PROPRIETY OF SUMMARY JUDGMENT

### A. Risk of Loss

■ In its first issue, Fluid Concepts contends the trial court erred in granting DA's summary judgment motion on the issue of liability for the missing, leased water treatment systems. Specifically, Fluid Concepts argues that DA's responsibility for the loss of these systems is a fact issue.

DA moved for summary judgment on grounds that there was no basis for a claim for damages since the evidence showed that the property which was the subject of the lease was "lost" in 1999; the lease agreement did not address the risk of loss or place the risk of loss upon the lessee (DA); and, pursuant to section 2A.219 of the business and commerce code, since the risk of loss was not transferred to the lessee (DA), the lessee had no liability for the water treatment systems when they were not returned after the lessee terminated the lease on August 15, 2000. In addition to other evidence, DA relied on the lease agreement to support its arguments. DA also contended that, to be entitled to judgment on its claims for conversion for the missing equipment or for rentals from October 1999 to August 2000, Fluid Concepts had the burden to prove that the systems were on the premises or in DA's custody in that time period, but Fluid Concepts had no such evidence.

In its response, Fluid Concepts relied on the lease agreement and contended that the risk of loss was upon DA for two reasons: first, the lease remained in effect until appellees removed and returned the leased property, and second, pursuant to section 2A.220(b), the risk of loss passed to the lessee.[1] Also in its response, Fluid Concepts cited several "undisputed facts" including: the lease did not terminate until the equipment was returned; DA termi-

---

1. Section 2A.220(b) provides:
   Whether or not risk of loss is to pass to the lessee, if the lessee as to conforming goods

already identified to a lease contract repudiates or is otherwise in default under the lease contract, the lessor, or, in the case of

nated the lease in August 2000; DA did not return the equipment; and DA was unable to locate the equipment.

To resolve this issue, we must determine, as a matter of law and fact, who bears the legal obligation and responsibility for the water treatment systems. The parties refer to this as risk of loss. In considering this issue, we note, in particular, paragraph 4C of the lease provides that "[u]pon return of [the water treatment systems] to Lessor ..., and all monies owed to Lessor by Lessee having been paid, this Agreement will become null and void." Also, it is undisputed that DA terminated the lease in August 2000 and had not made lease payments since January 2000. Further, several provisions of chapter 2A (the Uniform Commercial Code—Leases) address which party to a lease bears the risk of loss for the property which is the subject of the lease. Pertinent here, because of the parties' arguments, is section 2A.219(a), which describes the general rule that "risk of loss is retained by the lessor and does not pass to the lessee." TEX. BUS. & COM.CODE ANN. § 2A.219(a) (Vernon 1994). On the other hand, section 2A.220(b) addresses transfer of risk of loss to the lessee "for a commercially reasonable time," only where the lessee is in breach and there is "any deficiency in the lessor's ... effective insurance coverage...." *Id.* § 2A.220(b). Finally, the ramifications of a casualty loss of the property, which is claimed by DA, are addressed in section 2A.221(1), where it provides that when "goods suffer casualty before risk of loss passes to the lessee," the lessee is not at fault, and "if the loss is total, the lease

contract is avoided." *See id.* § 2A.221(1) (Vernon 1994).

The facts are straightforward. Both parties acknowledge the existence of the "lease agreement renewal." It is undisputed that DA terminated the lease in August 2000 and did not return the systems. DA claims the water treatment systems were "lost." DA says that, pursuant to section 2A.221(1), this is a loss which avoids its liability on the lease. However, there is no explanation in the record as to what happened to the systems. They were simply gone.

We conclude that section 2A.221(1) would cause a lessee's obligations to be avoided only where there is a total casualty loss. On this record, since no facts were offered to show there was a "casualty" loss, that section does not apply. Further, we conclude that Fluid Concepts's alternative argument under section 2A.220(b) is misplaced when it claims the risk of loss shifted to DA because of DA's default. There is no evidence of a deficiency in the lessor's insurance coverage which is required for applicability of section 2A.220(b). On this record, that section is inapposite.

While the sections of chapter 2A cited by the parties are not applicable, other parts of chapter 2A direct us to the lease agreement. Section 2A.301 provides that "a lease contract is effective and enforceable according to its terms between the parties...." *Id.* § 2A.301 (Vernon 1994). Further, the party "seeking enforcement [of a lease] has rights and remedies as provided in this chapter and, except as limited by this chapter, as provided in the

a finance lease, the supplier, to the extent of any deficiency in the lessor's or the supplier's effective insurance coverage may treat the risk of loss as resting on the lessee for a commercially reasonable time.

TEX. BUS. & COM.CODE ANN. § 2A.220(b) (Vernon 1994).

lease agreement." *Id.* § 2A.501(a), (b) (Vernon 1994).

Having considered these arguments and statutory provisions, we conclude there is merit in Fluid Concepts's argument that the terms of the lease agreement bind the parties on this issue. Further, we conclude that the resolution of this case does not turn on the interpretation of the "risk of loss" legal concept espoused by the parties under chapter 2A. Essential to the resolution of this case is the proposition that the lease requires the lessee to return the water treatment systems upon termination of the lease. Fluid Concepts adequately pointed out evidence in support of its argument that the lease agreement governed the liability for the loss of the systems after the lease was terminated. The legal bases asserted by DA in support of its motions for summary judgment, as described above, are inapplicable. We conclude the trial court erred in granting summary judgment in DA's favor under either the traditional or no-evidence standard. We decide the first issue in Fluid Concepts's favor.

## B. Recovery of Lease Payments after January 2000

■ In its second issue, Fluid Concepts contends the trial court erred in granting summary judgment barring recovery of lease payments after January 2000. DA moved for summary judgment on grounds that: (1) there could be no claim for lease payments since the equipment was "lost" sometime in 1999; (2) section 2A.221(1) operated to terminate the lease and DA's liability under the lease; (3) it was Fluid Concepts's burden of proof as lessor to show that the equipment was on DA's property; and (4) DA terminated the lease in August 2000, and, at that point, no further lease payments were due.

In its response, Fluid Concepts claimed that DA's reliance on section 2A.221(1) was erroneous since that section operated only where there was a "casualty" loss and there was no evidence of any "casualty" which caused the "loss" of the equipment. Further, Fluid Concepts asserted that, because there was no evidence of when the property was "lost," the date of the "loss" was disputed.

On this record, we conclude, as stated above, that section 2A.221(1) and the other legal propositions raised by DA in support of its motions for summary judgment are not implicated since there was no evidence offered to the trial court as to a "casualty" loss. Further, the parties agree that the lessee terminated the lease in writing in August 2000. The trial court must apply the law to the facts to determine whether that termination ends the obligation to make rental payments without a "casualty" loss and the amount of rental payments due, if any. We conclude the trial court erred in granting summary judgment under either the traditional or no-evidence standard on this issue. The second issue is decided in Fluid Concepts's favor.

## C. Liquidated Damages

■ In its third issue, Fluid Concepts contends that the trial court erred in granting summary judgment in DA's favor on the issue of liquidated damages due as a result of late or missed lease payments. In deciding this issue, we focus upon section 4B of the lease agreement which provides that if rental payments of $1,250 per quarter are past due, a "late charge" of ten percent per month shall be due in addition to the rental payments. Further, section 4B provides that all late charges shall be considered liquidated damages.

In its motion for summary judgment on the issue of liquidated damages, DA's sole claim was that Fluid Concepts had the

burden of proof to come forward with evidence to prove that the "late charge" was liquidated damages and the amount of the claimed liquidated damages was a "reasonable forecast of just compensation for the harm that is caused by the breach." *Stewart v. Basey*, 150 Tex. 666, 670, 245 S.W.2d 484, 486 (1952) (citation omitted). In response and on appeal, Fluid Concepts, citing *Commercial Union Insurance Co. v. La Villa Independent School District*, 779 S.W.2d 102 (Tex.App.-Corpus Christi 1989, no writ), claimed that DA, rather than Fluid Concepts, has the burden to come forward to prove its defense of "penalty."

This is a question of law. While *Stewart* does not address clearly which party has the burden of proof on this legal issue, the Corpus Christi Court of Appeals in *Commercial Union* very clearly places the burden on DA to prove its claim of penalty, stating, "[T]he party asserting that a liquidated damages clause is, in fact, a penalty provision has the burden of proving this defense." *Id.* at 106. Once Fluid Concepts made a claim for the "late charge" as liquidated damages, it was DA which had the burden of proof to come forward with evidence as to its defense of penalty. Accordingly, the trial court erred in granting summary judgment on this issue. We decide this issue in Fluid Concepts's favor.

### D. Unchallenged Grounds for Summary Judgment

■ Fluid Concepts makes no argument that the trial court erred in granting summary judgment on the other claims it set forth in its pleadings. *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970) (issue which simply complains "the trial court erred in granting the motion for summary judgment" allows argument as to all possible grounds upon which summary judgment should have been denied; alternatively, "'splintered Points of Error'" may be used to attack all possible grounds upon which summary judgment should have been denied); *cf. Star–Telegram, Inc.*, 915 S.W.2d at 473 (applying *Malooly Bros., Inc.*, and concluding that appellant's arguments under broad point attacking propriety of summary judgment necessarily included attack on each ground). Accordingly, we affirm the grant of summary judgment on Fluid Concepts's claims except as described above.

### E. DA's Sole Issue

In its issue on appeal, DA contends that the trial court erred in overruling its objections to the affidavit of Fluid Concepts's expert on the value of the missing water treatment systems. Because we have decided in Fluid Concepts's favor on its three issues without reaching valuation, we need not address the trial court's ruling on objections to evidence regarding valuation submitted in response to the summary judgment motion. Accordingly, we express no opinion on the objections or the trial court's ruling. *See* TEX.R.APP. P. 47.1.

### CONCLUSION ON FLUID CONCEPTS'S ISSUES ON APPEAL

Having decided Fluid Concepts's three issues in its favor, we reverse the trial court's order granting final summary judgment for DA as to those claims and remand the same for further proceedings. Since the trial court's order granting final summary judgment does not identify expressly the claims it decided, we will articulate what is remanded. On remand, there will be further proceedings on Fluid Concepts's negligence, contract, and conversion/waste claims seeking damages for the value of the five water treatment systems, the contract claim for lease payments, liquidated damages, and attorney's fees pursuant to the agreement.

As to any other claims, including Fluid Concepts's claim for foreclosure of liens arising from security agreements/financing statements, the dismissal without prejudice of DA's request for a nonsuit of its counterclaim, and the dismissal without prejudice of Intervenor Alan Wittenberg's request for nonsuit of his plea in intervention, we affirm the trial court's order granting final summary judgment for DA.