Opinion issued October 21, 2010                                                     

 

 

 

 

 



 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-09-00155-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



SP TERRACE, L.P. AND TYEE MANAGEMENT, LLC, Appellants

 

V.

 

MERITAGE HOMES OF TEXAS, LLC, Appellee

 

 



On Appeal from the 165th District Court

Harris County, Texas

Trial Court Cause No. 2007-43637

 

 



OPINION ON REHEARING

          In
this dispute over an earnest money contract to develop a plat of real estate, the
trial court granted summary judgment in favor of Meritage Homes of Texas, LLC
(Meritage) on its breach of contract claim against SP Terrace, LP, and Tyee
Management, LLC (collectively, SP Terrace). 
The trial court summarily rejected SP Terrace’s counterclaims for breach
of contract against Meritage.

          The
contract called for SP Terrace to file a subdivision plat by December 31,
2005.  SP Terrace concedes that it did
not meet this deadline.  But it argues that
the contract extended the deadline, or alternatively that its compliance was
excused.  It claims fact issues exist on
its affirmative defenses of oral modification, waiver, delay and interference
by Meritage, on the amount of attorney’s fees, and on its counterclaim against
Meritage.  We conclude that SP Terrace raises
a fact issue on the issues of waiver and delay, but not as to contract
modification or interference.  We
therefore reverse the trial court’s summary judgment and remand the case for
trial.  We grant rehearing and withdraw
our opinion and judgment dated May 6, 2010, to address an argument that SP
Terrace raises in its motion for rehearing. 
Our disposition is unchanged.  

Background

Underlying Facts 

SP Terrace entered into an earnest
money contract with Meritage to develop and sell ninety-six lots in a proposed Harris
County subdivision.  The development plan
required small and narrow lots, and Meritage was one of a few builders who
could construct houses to fit the particular lot sizes.  The contract terms required SP Terrace to improve
the overall subdivision.  In particular,
it required SP Terrace to file a subdivision plat with Harris County by a
December 31, 2005 substantial completion deadline.  After substantial completion, Meritage would
then purchase the lots in a series of transactions.  The total purchase price was $2,688,000.  Meritage deposited ten percent of this price,
$268,000, with SP Terrace as earnest money. 
If SP Terrace did not achieve substantial completion by December 31, 2005,
Meritage could terminate the contract and recover its earnest money
deposit.  But, if Meritage delayed SP
Terrace’s performance of its contractual obligations, the substantial
completion deadline would “be extended to the extent of any such delay.”

On November 30, representatives from
Meritage and SP Terrace met to discuss the project.  At this point, SP Terrace was ready to file
the subdivision plat.  Meritage asked for
changes to the plat, and it requested that SP Terrace postpone filing the plat to
accommodate those changes.  SP Terrace
agreed, but informed Meritage that a six-month extension of the substantial completion
deadline would be necessary to address these and any future changes to the
development.  According to Tyler Todd,
the president of Tyee Management, SP Terrace’s general partner, and Kelly
Smalley, the project manager, the parties orally agreed to extend the substantial
completion deadline, and the representatives of Meritage agreed to sign a
written extension memorializing the oral modification.  Smalley mailed a written agreement to Meritage
before December 31, 2005.  She never
received a response.

The parties continued to work
together to make changes and improvements to the development into early February
2006.  But on February 3, Meritage
informed SP Terrace that, due to SP Terrace’s failure to meet the substantial
completion deadline, Meritage was terminating the contract and demanding the
return of its earnest money deposit.

Procedural History

After SP Terrace refused to return
the earnest money deposit, Meritage sued for breach of contract.  SP Terrace counterclaimed for breach of
contract, alleging that Meritage (1) delayed SP Terrace’s performance, (2)
failed to cooperate with SP Terrace, and (3) breached their oral agreement
to extend the substantial completion deadline by six months, all of which
entitled SP Terrace to retain the earnest money deposit and recover actual
damages in addition to the earnest money it kept.

Meritage moved for traditional and no-evidence
summary judgment on its claims against SP Terrace and on SP Terrace’s counterclaim.  Meritage contended that the parties never agreed
to extend the substantial completion deadline. 
Meritage argued that SP Terrace’s counterclaim failed as a matter of law
because it did not state a claim for affirmative relief and the liquidated
damages provision in the contract precluded SP Terrace from recovering actual
damages in excess of the earnest money deposit. 
Meritage contended that SP Terrace’s waiver defense failed because
Meritage never renounced its right to terminate the contract, and the forty-eight
days that had passed between the substantial completion deadline and the date
Meritage demanded the return of its earnest money deposit was not long enough
to show that Meritage intended to yield its right to terminate.  Meritage argued that any oral modification of
the contract is unenforceable because it materially altered the obligations of
the underlying written contract. 
Meritage also noted that SP Terrace failed to present any evidence that
the amount of liquidated damages was an unreasonable forecast of the amount of
its damages.

SP Terrace responded with the Todd
and Smalley affidavits to show that fact issues existed regarding (1) an agreement
to extend the substantial completion deadline; (2) whether Meritage, through
its oral agreement to extend the deadline and its continued work with SP
Terrace after December 31, 2005, waived the deadline; and (3) whether Meritage
breached its duties to cooperate with SP Terrace and to not delay or interfere
with SP Terrace’s performance of its contractual obligations.  SP Terrace also argued that the liquidated
damages provision of the contract, which limited SP Terrace’s recovery to
retention of the earnest money deposit, was unenforceable penalty because it hypothetically
would allow the forfeiture of the deposit due to any breach by Meritage, including
a trivial one.

The trial court granted Meritage’s
motions.  Shortly thereafter, Meritage
moved for entry of a final judgment, asking the trial court to award it
$268,000 in damages, $71,170.50 in attorney’s fees incurred in prosecuting its
claims in the trial court proceedings, $40,000 in attorney’s fees if SP Terrace
appeals to an intermediate appellate court, and an additional $27,500 in
attorney’s fees if Meritage ultimately prevails after full briefing and oral
argument to the Texas Supreme Court.

SP Terrace moved the trial court to reconsider
the summary judgment.  SP Terrace
attached excerpts from the deposition of Michael Pizzitola, taken after the
original submission of the summary judgment motions, to further support its
contentions.  SP Terrace also attached
the affidavit of its counsel of record opposing Meritage’s requested amount of
attorney’s fees.  The trial court’s
docket sheet includes the following entry for December 8, 2008:  “D. (seller) Motion for leave of court to
file additional evidence granted.”  The
trial court did not memorialize the docket entry in any order, even though SP
Terrace submitted a proposed order and requested that the trial court sign
it.  The trial court entered a final
judgment in favor of Meritage, awarding the $268,000 earnest money deposit as
damages and the full amount of attorney’s fees requested by Meritage.

Discussion

Standard of Review

          We
review de novo the trial court’s grant of a motion for summary judgment.  Provident Life & Accid. Ins. Co. v. Knott,
128 S.W.3d 211, 215–16 (Tex. 2003).  After an adequate time for discovery, a party
may move for no-evidence summary judgment if there is no evidence of one or
more essential elements of a claim or defense on which the adverse party bears
the burden of proof at trial.  Tex. R. Civ. P. 166a(i).  Once a party moves for no-evidence summary
judgment, the burden shifts to the non-movant to present evidence raising a
genuine issue of material fact on each element specified in the motion.  Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex. 2006).  We review the evidence in the light most
favorable to the non-movant, crediting favorable evidence if reasonable jurors
could, and disregarding contrary evidence unless reasonable jurors could
not.  Mann
Frankfort Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848
(Tex. 2009) (citing City of Keller v.
Wilson, 168 S.W.3d 802, 827 (Tex. 2005)).

          When
we construe a contract, we must “ascertain and give effect to the parties’
intentions as expressed in the document.” 
Frost Nat’l Bank
v. L & F Distribs., Ltd., 165 S.W.3d 310, 311–12 (Tex. 2005) (per
curiam).  We consider the contract
as a whole in order to give effect to all provisions of the contract.  See id.
at 312.  We give
contractual terms their plain, ordinary, and generally accepted meaning unless
the contract shows that the parties intended a different meaning to
control.  See Heritage Res. v. NationsBank, 939 S.W.2d 118,
121 (Tex. 1996).

Late-Filed Summary Judgment Evidence

          SP
Terrace initially contends that the trial court erred in granting summary
judgment because the late-filed deposition testimony of Meritage’s Michael
Pizzitola creates fact issues.  Texas
Rule of Civil Procedure 166a(c) provides that “[e]xcept on leave of court, the
adverse party, not later than seven days prior to the day of hearing may file
and serve opposing affidavits or other written response.”  Tex. R. Civ. P. 166a(c).  A trial court may accept late-filed summary
judgment evidence, but it must affirmatively indicate that it accepted or
considered that evidence.  See Stephens v. Dolcefino,
126 S.W.3d 120, 133-34 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).  If no order in the record indicates that the court
gave leave to file untimely evidence, then we presume that the trial court did
not consider the evidence.  See Benchmark Bank v. Crowder, 919
S.W.2d 657, 663 (Tex. 1996); Dixon v.
E.D. Bullard Co., 138 S.W.3d 373, 375–76 (Tex. App.—Houston [14th Dist.]
2004, pet. granted, judgm’t vacated w.r.m.); Farmer v. Ben E. Keith Co., 919 S.W.2d 171, 176 (Tex. App.—Fort
Worth 1996, no writ).

          SP
Terrace relies on the trial court’s docket entry as sufficient indication that
the trial court granted it leave to late-file the Pizzitola deposition as
summary-judgment evidence.  We previously
have held, however, that a docket entry “forms no part of the record we may
consider; it is a memorandum made for the trial court and clerk’s
convenience.  This rule results, in part,
from the inherent unreliability of docket entries.”  Miller
v. Kendall, 804 S.W.2d 933, 944 (Tex. App.—Houston [1st Dist.] 1990, no writ)
(citing Energo Int’l Corp. v. Modern
Indus. Heating, Inc., 722 S.W.2d 149, 151–52 (Tex. App.—Dallas 1986, no writ)
(“Consequently, there is no indication in the record that permission of the
court was requested or obtained to file the amended answer and that the amended
answer was properly before the court.”)). 
SP Terrace contends that our holding in Dolcefino supports its argument despite these cases.  In Dolcefino,
however, the trial judge stated on the record at the motion for reconsideration
hearing that “the court will include the evidence offered today in the summary
judgment record.  The court, even taking
this evidence into the record, denies Plaintiff’s motion for new trial.”  See
Dolcefino, 126 S.W.3d at 134.  We noted that the trial judge’s statement on
the record indicated that the judge had accepted the evidence as belatedly
offered summary judgment evidence.  See id. 
Here, in contrast, SP Terrace requested that the trial court sign an
order granting leave to file the additional evidence that it had attached to
the motion for reconsideration.  It
attached the docket sheet and a proposed order, but the trial court never
entered the order.  Following Miller, we decline to extend the Dolcefino analysis to docket sheet
entries, and thus hold that this evidence is not part of the summary judgment
record.

          In
a similar vein, Meritage, in its response to SP Terrace’s motion for
reconsideration, attached excerpts from the deposition of Tyler Todd that it
had not previously filed with the trial court. 
Meritage did not request leave of court to late-file these excerpts from
Todd’s deposition, and thus these excerpts do not form part of the summary
judgment record.  See Tex. R.
Civ. P. 166a(c); Dolcefino, 126 S.W.3d at 133.

Oral Modification of the Substantial Completion
Deadline

          Turning
to the merits, SP Terrace first contends that an oral modification to the
contract exists and thus it is not liable for any breach associated with missing
the December 31 deadline.  Under the
statute of frauds, a contract for the sale of real estate must be in writing
and signed by the party charged with compliance with its terms.  Tex.
Bus. & Com. Code Ann. § 26.01(b)(4)
(Vernon 2009).  Generally, if a contract
falls within the statute of frauds, then a party cannot enforce any subsequent
oral material modification to the contract. 
See Dracopoulas v. Rachal, 411
S.W.2d 719, 721 (Tex. 1967); see also
Walker v. Tafralian, 107 S.W.3d 665, 670 (Tex. App.—Fort Worth 2003, pet.
denied).

In Dracopoulas, the Texas Supreme Court held unenforceable an oral
modification that extended the time for performance indefinitely.  See
Dracopoulas, 411 S.W.2d at 722.  The court reasoned that the termination date
of the contract was the “hinge upon which still other contractual rights and
duties turn,” and extending the termination date indefinitely would destroy
other contractual provisions that depended on the termination date to become
operative.  See id.; see also King v.
Texacally Joint Venture, 690 S.W.2d 618, 620 (Tex. App.—Austin 1985, writ
ref’d n.r.e.) (“It has been held that attempted alteration of the time for
performance in real estate contracts is a material alteration.” (citing Vendig v. Traylor, 604 S.W.2d 424 (Tex.
Civ. App.—Dallas 1980, writ ref’d n.r.e.))). 
But see Triton Comm’l Props., Ltd.
v. Norwest Bank Tex., N.A., 1 S.W.3d 814, 819 (Tex. App.—Corpus Christi
1999, pet. denied) (holding that extending the time for performance does not,
by itself, materially alter the underlying obligations, even if the contract
would otherwise terminate).  In the right
circumstances, an extension for the time for performance can be a material
alteration.

This case presents one of those
circumstances.  Even if the oral modification
extending performance would not ordinarily materially alter the underlying written
contract, when a party relies on the modification to assert that the other
party is in material breach to excuse further performance, the modification then
becomes material and unenforceable unless in writing.  See
Walker, 107 S.W.3d at 670; King, 690 S.W.2d at 620.

          Todd
and Smalley described the November 30 meeting between Meritage and SP Terrace
representatives.  Each averred that, at
this meeting, Meritage representatives requested that SP Terrace delay filing
the subdivision plat to allow the parties to continue making changes to the
development.  SP Terrace agreed, but requested
a six-month extension of the December 31 deadline.  According to Todd and Smalley, Meritage’s
representatives agreed to extend the deadline and to sign a written agreement
confirming that extension.  Smalley mailed
a written extension to Meritage before December 31, and although Meritage never
returned a signed extension, it also never objected.

Meritage points to a January 20, 2006,
letter from Smalley to Steve Harding as evidence that the parties did not agree
to extend the deadline:

I had previously sent you an addendum to the Earnest
Money Contract prior to the end of the year extending the date of the contract
to June 30, 2006.  As of this date, I
have not received an executed addendum. 
I know there are still questions to be answered, but we need some assurance
that we can reach an agreement and declare some sort of modified substantial completion.

 

It is thus undisputed that the
parties never signed a written agreement to extend the deadline beyond December
31.  In addition, SP Terrace viewed the
extension of time to be a material alteration to the contract, sufficient to
excuse it from further performance, stating to the trial court:

Meritage agreed to extend the substantial completion
date and/or caused a default or delay in the substantial completion.  Meritage then refused to perform under the
Contract by its February 3, 2006 letter. 
This evidence is sufficient to show a prior or anticipatory breach by
Meritage, which would excuse further performance by SP Terrace.

 

SP Terrace thus asserts that
Meritage’s breach of the alleged oral extension of the substantial completion
deadline was sufficient to excuse any further performance by SP Terrace.  The modification here is a material term—as
such, it is unenforceable because it was never reduced to writing.  See
Walker, 107 S.W.3d at 670; King, 690 S.W.2d at 620.  We
hold that the trial court correctly granted summary judgment on SP Terrace’s
affirmative defense of modification.

Waiver of the Substantial Completion Deadline

          SP
Terrace next contends that a fact issue exists regarding Meritage’s waiver of
the December 31 deadline.  A party establishes
waiver by demonstrating (1) the express renunciation of a known right or (2) silence
or inaction for so long as to show the intent to yield a known right.  See
Motor Vehicle Bd. v. El Paso Indep. Auto Dealers, 1 S.W.3d 108, 111 (Tex. 1999).  Waiver can also result from acts that induce
the other party to believe that the party will not insist on exact performance
within the contractual time limits.  See Kennedy Ship & Repair, LP v. Pham,
210 S.W.3d 11, 20 (Tex. App.—Houston [14th Dist.] 2006, no pet.); see also KMI Continental Offshore Prod. Co. v. ACF Petrol. Co., 746 S.W.2d 238, 243 (Tex.
App.—Houston [1st Dist.] 1987, writ denied) (“[A] waiver can occur if a party
knowingly possessing the right acts in such a manner that the party misleads the
opposing party into believing that a waiver has occurred.”); Alfred, Meroney & Co. v. Rowe, 619
S.W.2d 210, 213 (Tex. App.—Amarillo 1981, writ ref’d n.r.e.).

          The
surrounding facts and circumstances must plainly demonstrate a party’s intent
to waive a known right.  See El Paso Indep. Auto
Dealers, 1 S.W.3d at 111.  Waiver may result when:  (1) a party assents to the other party’s
continued performance without objection to the delay; (2) a party states that
it will not require strict compliance with a deadline or acts such that the
other party reasonably believes strict compliance will not be required; or (3) a
party insists on performance by the other party even after breach of the
agreement.  See Delgado v. Methodist Hosp., 936
S.W.2d 479, 485 (Tex. App.—Houston [14th Dist.] 1996, no writ); Fairfield Fin. Group, Inc. v. Gawerc,
814 S.W.2d 204, 209 (Tex. App.—Houston [1st Dist.] 1991, no writ); Seismic & Digital Concepts, Inc. v.
Digital Res. Corp., 590 S.W.2d 718, 721 (Tex. Civ. App.—Houston [1st Dist.]
1979, no writ).  Ordinarily waiver
is a fact question; however, we decide a waiver issue as a matter of law if the
facts and circumstances are admitted or established.  See El
Paso Indep. Auto Dealers, 1
S.W.3d at 111.

          Todd
and Smalley aver that, at the end of November, SP Terrace was prepared to file
the subdivision plat, but delayed the filing at Meritage’s request.  They both averred that they told Meritage
that delaying the filing of the plat would require a six-month extension of the
substantial completion deadline and that Meritage orally agreed to this
extension, which suggested to them that Meritage would not insist upon the
December 31 deadline.  Smalley further
averred that she mailed the written extension prior to December 31 and never received any objections to the extension.  Todd and Smalley continued to work with
Meritage on the development into February 2006. 
Smalley participated in a January 10, 2006, meeting with Steve Harding
of Meritage to “discuss the proposed subdivision changes.”

          Meritage
cites Beal Bank, S.S.B. v. Schleider,
124 S.W.3d 640 (Tex. App.—Houston [14th Dist.] 2003, pet. denied), to support
its contention that SP Terrace does not raise a fact issue on waiver.  In Beal
Bank, the Fourteenth Court of Appeals held that representations that “an
extension would not be a problem,” the parties were “set to go,” and the bank
would “get back to” Schleider were insufficient to establish waiver.  See id.
at 654.  In
contrast, here, Todd and Smalley aver that Meritage continued to participate in
meetings with SP Terrace representatives and work with SP Terrace on further
changes to the development even after the December 31 deadline, indicating that
it continued to insist on performance after breach of the agreement.  In his affidavit, Tyler Todd states that SP
Terrace “continued to work with [Meritage] under the Contract and to
accommodate changes requested by [Meritage] throughout December 2005, January
2006, and into February 2006.”  Kelly
Smalley states that a Meritage representative participated in a meeting to
discuss the proposed subdivision changes on January 10, 2006, after the
deadline.  We hold that SP Terrace raises
a fact issue as to whether Meritage waived the December 31 substantial
completion deadline and its right to terminate the contract on this basis,
particularly in light of the contract provision that the substantial completion
deadline “would be extended” to the extent of any delay caused by
Meritage.  See Delgado, 936 S.W.2d at 485 (“A party
to a contract may effectively waive a breach by the other party by continuing
to insist on performance by the other party even after a breach.”).

Delay and Interference by Meritage

SP Terrace contends that fact issues
exist as to whether Meritage caused delays and interfered with SP Terrace’s
performance of its contractual obligations thus breaching an implied duty to
cooperate.

We examine the written contract to
determine the obligations of the parties. 
See Bank One, Tex., N.A. v.
Stewart, 967 S.W.2d 419, 435 (Tex. App.—Houston [14th Dist.] 1998, pet. denied),
cited with approval in Keck v. Nat’l
Union Fire Ins. Co., 20 S.W.3d 692, 701 (Tex. 2000); Nalle v. Taco Bell Corp., 914 S.W.2d 685, 687 (Tex. App.—Austin
1996, writ denied).  We do not imply a
covenant regarding a matter specifically covered by the terms of the written
contract, but we imply a duty to cooperate to the extent necessary for the
contract’s performance.  See Stewart, 967
S.W.2d at 434.  Thus, a party
cannot “hinder, prevent, or interfere with [another’s] ability to perform [its]
duties under [the] agreement.”  See id. at
435.  The implied covenant to cooperate
differs from the broader implied covenant of good faith and fair dealing, which
the Texas Supreme Court has rejected.  See Case Corp. v. Hi-Class Bus. Sys. of Am., Inc., 184 S.W.3d
760, 770 (Tex. App.—Dallas 2005, pet. denied) (citing Tex. Nat’l Bank v. Sandia Mtg. Corp., 872 F.2d 692, 698–99 (5th
Cir. 1989)).

When one party prevents another from
timely performing its contractual obligations, the failure to timely perform is
excused.  See Anderson Dev. Corp. v. Coastal States Crude Gathering Co., 543
S.W.2d 402, 406 (Tex. Civ. App.—Houston [14th Dist.] 1976, writ ref’d n.r.e.); see also Dorsett v. Cross, 106 S.W.3d
213, 217 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (“Prevention of
performance by one party excuses performance by the other party.”).  According to Todd and Smalley, SP Terrace prepared
to file the subdivision plat in November 2005, but at Meritage’s request, it
delayed filing it.  Smalley also stated
the following:

The development was often delayed by lack of
information, delays in approvals and changes in plans and designs from
[Meritage].  For example, I could not
obtain timely approval from [Meritage] for finalizing the design of the fences,
the location of the electrical service, Steve Harding’s failure to attend a
meeting on November 16, 2005 with CenterPoint Energy and failure to respond to
CenterPoint Energy on various issues. 
These failures and delays caused a delay in the substantial completion
of the subdivision.

 

Section 16(k) of the contract
provides that:  “Seller [SP Terrace]
shall not be responsible for any damage or delay caused by Purchaser [Meritage]
or Purchaser’s agent . . . and the
time limits for Seller’s performance hereunder shall be extended to the extent
of any such delay.”[1]  We hold that SP Terrace’s summary judgment
evidence raises a fact issue as to whether a delay caused by Meritage extended
the substantial completion deadline.

Summary Judgment on SP Terrace’s Counterclaim

          SP Terrace also sues Meritage for
breach of contract, and seeks damages beyond the earnest money deposit.  The trial court rejected this claim, and SP
Terrace appeals.  Meritage responds that
SP Terrace’s counterclaim is not one for affirmative relief, but in any event,
SP Terrace’s recovery is limited to the earnest money contract.

A.   
Claim for Affirmative Relief

Meritage argues that SP Terrace’s asserted
contractual defense to the refund of Meritage’s earnest money deposit is not an
affirmative claim for relief.  To qualify
as a claim for affirmative relief, the defendant must allege a cause of action
independent of the plaintiff’s claim, on which the defendant can recover
benefits, compensation, or relief, even though the plaintiff may abandon or
fail to establish its claim.  See Gen. Land Office v. OXY USA, Inc., 789 S.W.2d 569, 570 (Tex. 1990).  If the defendant only resists the plaintiff’s
right to recover, then it does not state a claim for affirmative relief.  See id.

          In
its “Second Amended Answer and First Amended Counterclaim,” SP Terrace stated
that Meritage’s “actions, promises and representations” constituted a prior
breach of the contract by Meritage, which excused SP Terrace from further
performance and entitled SP Terrace to retain the earnest money deposit and
recover actual damages, including lost profits, of at least $1,400,000.

Meritage argues that because SP Terrace
always possessed the earnest money deposit, and if SP Terrace prevailed or
Meritage abandoned its claim, SP Terrace would simply retain the earnest money.  Therefore, SP Terrace’s counterclaim, which
asks the trial court to determine that SP Terrace is entitled to the earnest
money, is essentially a claim for declaratory relief.  We disagree. 
SP Terrace asked the trial court to determine it has a right to the
earnest money deposit, but it also seeks actual damages beyond the earnest
money deposit.  See Howell v. Mauzy, 899 S.W.2d 690, 706 (Tex. App.—Austin 1994,
writ denied) (“A court may allow a declaratory-judgment counterclaim, however,
if it is something more than a mere denial of the plaintiff’s claim and has
greater ramifications than the original suit. 
A counterclaim has greater ramifications than the original suit if it
seeks affirmative relief.”) (internal citations omitted).  We hold that SP Terrace’s allegations state a
claim for relief independent of Meritage’s breach of contract claim.  If the trier of fact concludes that Meritage
has waived performance of the substantial completion deadline and was in breach
of the agreement, then SP Terrace is entitled to pursue its claim for breach.

B.   
Earnest Money as Liquidated Damages

SP Terrace asked the trial court to
set aside the earnest money liquidated damages provision for a breach by
Meritage, contending that it penalizes Meritage because it requires Meritage to
forfeit its earnest money no matter how trivial its breach.  SP Terrace requests this interpretation of
the contract so that its damages claim against Meritage can exceed the earnest
money deposit it kept after Meritage terminated the contract.  The clause in question provides that, upon
default by Meritage, SP Terrace, as its sole remedy, may terminate the contract
and retain the earnest money deposit.  

We enforce a liquidated damages
clause if (1) the harm caused by the breach is incapable or difficult of
estimation, and (2) the amount of liquidated damages is a reasonable forecast
of just compensation.  See Phillips v. Phillips, 820 S.W.2d 785, 788 (Tex. 1991).  An assertion that a liquidated damages
provision constitutes an unenforceable penalty is an affirmative defense, and the
party asserting penalty bears the burden of proof.  See Urban
Television Network Corp. v. Liquidity Solutions, 277 S.W.3d 917, 919 (Tex.
App.—Dallas 2009, no pet.); Fluid
Concepts, Inc. v. DA Apts., LP, 159 S.W.3d 226, 231 (Tex. App.—Dallas 2005,
no pet.).  Generally, that party must
prove the amount of actual damages, if any, to demonstrate that “the actual
loss was not an approximation of the stipulated sum.”  Baker v. Int’l Record Syndicate, Inc., 812 S.W.2d 53, 55 (Tex.
App.—Dallas 1991, no writ).  If
the amount stipulated in the liquidated damages clause is “shown to be
disproportionate to actual damages,” we should declare that the clause is a
penalty and limit recovery to actual damages. 
Johnson Eng’rs, Inc. v. Tri-Water
Supply Corp., 582 S.W.2d 555, 557 (Tex. Civ. App.—Texarkana 1979, no writ);
see also Tex. Bus. & Com. Code Ann. § 2.718(a) (Vernon 2009) (“A term fixing
unreasonably large liquidated damages is void as a penalty.”).  Whether a liquidated damages clause is an
unenforceable penalty is a question of law for the court, but sometimes factual
issues must be resolved before the court can decide the legal question.  See
Phillips, 820 S.W. 2d at 788.  For
example, in Phillips, the Texas
Supreme Court observed that “to show that a liquidated damages provision is
unreasonable because the actual damages incurred were much less than the amount
contracted for, a defendant may be required to prove what the actual damages
were.”  Id.

SP Terrace adduced no evidence in the
trial court that Meritage’s forfeit of its earnest money operated as a penalty
because Meritage’s breach was a trivial one. 
Its aim was just the opposite—it was to prove that Meritage’s breach
caused damages far higher than the earnest money amount, although it offered no
proof of that theory either.  We decline
to remove a limitation of remedy provision absent any evidence that the
liquidated amount in the contract is unreasonably high or low in light of the
alleged breach.  See Urban Television, 277 S.W.3d at 919; Fluid Concepts, Inc., 159 S.W.3d at 231.


SP Terrace relies on cases in which
courts have disregarded liquidated damages provisions as unreasonable in their
approximation of actual damages for trivial breaches.  See
Stewart v. Basey, 245 S.W.2d 484, 487 (Tex. 1952) (“Our conclusion is that,
since the contract provided the same reparation for the breach of each and
every covenant, and since it would be unreasonable and a violation of the
principle of just compensation to enforce it as to some of them, the provision
for stipulated damages should be treated as a penalty.”); Community Dev. Serv., Inc. v. Replacement Parts Mfg., Inc., 679
S.W.2d 721, 727 (Tex. App.—Houston [1st Dist.] 1984, no writ) (holding that liquidated
damages clause in earnest money contract was unenforceable penalty, because
even though it provided reasonable damages for major breaches of the contract,
it also allowed unreasonable damages for trivial breaches); Bethel v. Butler Drilling Co., 635 S.W.2d 834, 837–38 (Tex.
App.—Houston [14th Dist.] 1982, writ ref’d n.r.e.) (holding
same).  These cases are distinguishable
in that either it was the breaching party who argued that the provision was a
penalty, or in that the party seeking to set aside the provision adduced
evidence that the liquidated damages clause was not a reasonable approximation
of damages caused by the breach.  See Stewart, 245 S.W.2d at 487 (where
actual damages incurred by breaching party amounted to $38.50, “stipulation to pay
several thousand dollars . . . would be so unreasonable that no court would
lend its power to enforce it”);  Community Dev., 679 S.W. 2d at 727 (jury
findings and evidence supported claim that earnest money provision operated as
penalty);  Bethel, 635 S.W.2d at 843 (upholding trial court’s determination
that liquidated damages clause was penalty against breaching party, and
limiting plaintiff’s recovery to actual damages).

A liquidated damages provision is a
penalty if it punishes the breaching party by subjecting it to a
disproportionately high amount of damages relative to reasonably anticipated
actual damages.  Absent evidence that the
earnest money amount here was not a reasonable approximation of an anticipated
breach, limiting recovery to the earnest money deposit and preventing a party
from recovering actual damages in excess of the bargained for liquidated amount
does not constitute a penalty to the breaching party.[2]  We decline to hold as a matter of law that
the earnest money provision in this case is a penalty. Cf. Phillips, 820 S.W.2d at 788–89 (no fact issue that provision was penalty against breaching party because
it provided that actual damages be determined and multiplied tenfold).

Required Notice to Recover Earnest Money

          Finally,
SP Terrace contends that it did not receive thirty days’ notice and an
opportunity to cure the default.  Section
9(c) of the contract states:

In the event Seller shall default in Seller’s
obligations hereunder . . . Purchaser shall give Seller
thirty (30) days written notice and opportunity to cure such default.  If Seller fails to cure its default within
the thirty day period provided in the notice, Purchaser, as its sole and
exclusive remedies, may either (i) terminate this Contract and obtain the
return of its Earnest Money or (ii) enforce specific performance of Seller’s
obligation to convey the Lot(s) upon payment of the Purchase Price.

 

Meritage responds that the contract
does not require notice and an opportunity to cure because section 4(i) states
that if “Substantial Completion does not occur by December 31, 2005 at option
of Purchaser this Contract shall terminate and Purchaser is relieved of any obligation hereunder.”  We agree, and hold that once Meritage
exercised its option to terminate due to SP Terrace’s failure to meet the
deadline, Meritage was relieved of further contractual obligations, including
the requirement of providing notice and an opportunity to cure.  Reading the contract to
require notice and an opportunity to cure before recovering the earnest money,
even if SP Terrace did not achieve substantial completion by December 31, would
render section 4(i)’s provision that failure to achieve substantial completion
by December 31 relieves Meritage of any contractual
obligation a nullity.  See J.M. Davidson, Inc. v. Webster, 128
S.W.3d 223, 229 (Tex. 2003) (“[W]e must examine and consider the entire writing
in an effort to harmonize and give effect to all the provisions of the contract
so that none will be rendered meaningless.”). 
We therefore hold that SP Terrace was not entitled to notice and a
thirty day opportunity to cure any failure to comply with the substantial
completion deadline.

Conclusion

          We
hold that SP Terrace failed to raise a fact issue on its affirmative defenses
of modification and interference by Meritage, but raises fact issues whether
Meritage waived performance of the December 31 substantial completion deadline
and whether Meritage caused delay that extended the time for performance.  We further hold that SP Terrace’s counterclaim
states a claim for affirmative relief, but that SP Terrace fails to prove on
this record that the earnest money provision of the contract is unenforceable
as a matter of law.  We therefore reverse
and remand the case for further proceedings.[3]

 

 

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Chief Justice
Radack and Justices Bland and Massengale.











[1] The contract provides in section 16(k) that the
substantial completion deadline “would be extended” if Meritage caused the
delay of the deadline.  Meritage argued
in the trial court that SP Terrace’s reference to section 16(k) in an amended
pleading filed after its motion for partial summary judgment was filed came too
late to support its contractual defenses. 
We disagree, in so much as SP Terrace expressly
argued in its summary judgment response that “by words, actions and inaction,
Meritage caused the default and/or delay in the substantial completion.”





[2] Other jurisdictions that have addressed this issue
have held similarly, and refused to strike the liquidated damages provision on
the ground that it is an unenforceable penalty. 
See, e.g., Mahoney v. Tingley, 529 P.2d 1068, 1070
(Wash. 1975) (“A penalty exists where there is an attempt to enforce an
obligation to pay a sum fixed by agreement of the parties as a punishment for
the failure to fulfill some primary contractual obligation.  In this case, it is not the party in default
who seeks relief from an excessively high liquidated damages provision.  Rather, the provision operates to limit the
recovery of the party who incurred a loss as a result of the other parties’
breach.  There being no element of
punishment involved, it cannot be said that plaintiff is being penalized in any
sense.”)(internal citations omitted); Margaret
H. Wayne Trust v. Lipsky, 846 P.2d 904, 910 (Idaho 1993) (following Mahoney and refusing to strike down
liquidated damages provision as penalty when non-breaching party sought damages
in excess of provision amount).





[3] SP Terrace also contends that the trial court awarded
unreasonable and excessive attorney’s fees to Meritage.  Because we reverse and remand on the merits,
we vacate the award of attorney’s fees.